MORRIS, Judge,
Concurring in part and dissenting in part.
Based on our decision in Stelmack, and pursuant to the parties’ stipulation, I concur with the majority’s decision to reverse the trial , court’s denial of Parker’s motion to dismiss the information as to counts 1, 2, 3, 5, 6, 7, and 10 which feature pictures depicting lewd exhibition of genitalia without sexual activity. However, I do respectfully disagree with my learned colleagues as to that part of the majority opinion that reverses the judgments and sentences as to counts 4, 8, and 9 which depict photographs featuring sexual activity. With regard to these last three pictures, the majority feels bound by our opinion in Stelmack and also appears to feel constrained by the unartful legislative drafting of section 827.071(5) of the Florida Statutes (2007). I disagree, and I would affirm the trial court’s order as it relates to these three photographs because they depict sexual activity.
Our decision in Stelmack dealt with photographs featuring the heads of children attached to the bodies of nude adult women. Unlike the three photographs here, none of the photographs in Stelmack depicted sexual activity. As the majority opinion points out, in Stelmack, we opined that to prove the crime of possession of child pornography, a person must “ ‘knowingly possess a photograph, ... representation, or other presentation which, in *458 whole or in part, he or she knows to include any sexual conduct by a child.’ ” 58 So.3d at 875 (emphasis omitted) (quoting § 827.071(5)). We then further noted that the definition of “sexual conduct” set forth in section 827.071(l)(g) included
“actual or simulated sexual intercourse, deviate sexual intercourse, sexual bestiality, masturbation, or sadoma[so]chistic abuse; actual lewd exhibition of the genitals; actual physical contact with a person’s clothed or unclothed genitals, pubic area, buttocks, or, if such person is a female, breast, with the intent to arouse or gratify the sexual desire of either party; or any act or conduct which constitutes sexual battery or simulates that sexual battery is being or will be committed.”
Stelmack, 58 So.3d at 876 (quoting § 827.071(l)(g)). In Stelmack, we read section 827.071(l)(g) and 827.071(5) together, and we determined that a conviction based on lewd exhibition required actual lewd exhibition by a child. Thus, because the photographs in Stelmack contained images of adult genitalia, there was no violation of section 827.071(5). Stelmack, 58 So.3d at 877. We explained that at most, the photographs depicted simulated lewd exhibition by a child. We pointed out that while the words “actual or simulated” were used to describe sexual intercourse and other sexual acts, the legislature did not use the word “simulated” to describe lewd exhibition of the genitals. Id. As a result, we concluded that the legislature intended to exclude simulated lewd exhibition of the genitals from the crime of possession of child pornography. Id.
The crux of this case rests on a crucial distinction from Stelmack. The three photographs at issue here contained children’s heads superimposed on the bodies of adult females engaged in sexual activity consisting of sexual intercourse, deviate sexual intercourse, and masturbation. And section 827.071(l)(g) specifically prohibits “simulated sexual intercourse, deviate sexual intercourse, [or] masturbation.” “Simulated” as defined in section 827.071(l)(i) “means the explicit depiction of conduct set forth in paragraph (g) which creates the appearance of such conduct and which exhibits any uncovered portion of the breasts, genitals, or buttocks.” The photographs here clearly contain an explicit depiction of the conduct set forth in paragraph (g). Because the statutory language is clear and unambiguous, I believe that we should give full effect to the plain meaning[9] and hold that the three photographs in this case qualify as child pornography based on the definition of sexual conduct in section 827.071(l)(g).
Further, I believe that the holding in United States v. Bach, 400 F.3d 622 (8th Cir.2005), is relevant and instructive here. In Bach, the government sought to prosecute Bach under the authority of 18 U.S.C. § 2256(8)(C), which prohibits composite images of child pornography as well as pictures which are “modified to appear that an identifiable minor is engaging in sexually explicit conduct.” 400 F.3d at 629. The photograph at issue in Bach was a composite of a well-known child entertainer’s face attached to another child’s nude body. 400 F.3d at 625. The body portion of the photograph revealed that the child was sexually aroused. Id. In holding that the photograph came within the proscription of the federal statute, the court in Bach reasoned that
[although there is no contention that the nude body actually is that of [the well-known child entertainer] or that he *459 was involved in the production of the image, a lasting record has been created of [him], an identifiable minor child, seemingly engaged in sexually explicit activity. He is thus victimized every time the picture is displayed.
Id. at 632.
While I acknowledge that the federal statute is more carefully drafted and broader in nature than section 827.071(l)(g) and (5), I also believe that the photographs in counts 4, 8, and 9 fall squarely within the proscription set forth in section 827.071(l)(g) and (5), and because the photographs contain images of identifiable minor children, the same concerns that arose in Bach are present here. These photographs created a lasting record, and these real and identifiable children were victimized every time the photographs were viewed.
I likewise strongly disagree with my colleagues that prohibiting photographs such as the ones at issue here does not comport with legislative intent. In support of our decision in Stelmack, we described the legislative intent as being to “ ‘facilitate the prosecution of persons who use or promote any sexual performance by a child.’ ” Stelmack, 58 So.3d at 877 (emphasis omitted) (quoting Fla. H.R. Comm, on Crim. Just., HB 148 (1983) Staff Analysis 2 (Apr. 14, 1983) (on file with comm.)). The legislature further indicated it was focused on child abusers versus pornography and thus the legislation was directed at people who use or promote the use of children in sexual performances as well as those who consent to the child’s participation. Id. (citing id.).
I acknowledge that the three photographs at issue here did not involve actual sexual performance by a child. However, it is clear that the purpose of the photographs is to promote sexual performance by a child. The photographs were packaged in photograph sleeves, much like a photograph album. The construction and manipulation of the photographs clearly appeased Parker’s own need for sexual gratification, but I also believe that the packaging of the photographs in this manner appears to indicate an intention to display the photographs. Certainly this type of promotion of sexual performance by a child was intended to be prohibited by the legislature.
Although the majority decided this case without the necessity of addressing the constitutionality of 827.071, because I do not fully join in their opinion, I feel compelled to address this issue. In his brief, Parker argued that the holding in State v. Zidel, 156 N.H. 684, 940 A.2d 255 (2008), supported his contention that section 827.071(5) is unconstitutional as applied to him. However, in United States v. Hotaling, 599 F.Supp.2d 306 (N.D.N.Y.2008), which was a case involving facts virtually identical to the case here under review, the court expressly rejected both the holding and rationale of Zidel.
In Zidel, the court held that where photographs of nude bodies do not actually depict body parts of children engaging in sexual activity, the image is not a product of sexual abuse and therefore the mere possession of such photographs does not constitute demonstrable harm to the child whose face is depicted. 940 A.2d at 263 (citing Ashcroft v. Free Speech Coalition, 535 U.S. 234, 249, 122 S.Ct. 1389, 152 L.Ed.2d 403 (2002)). The Zidel court also cited Osborne v. Ohio, 495 U.S. 103, 111, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990), for the proposition that “[t]he mere possession of morphed images depicting no victims of child pornography cannot ‘haunt [] the children in years to come’ since the children do not know of their existence and did not participate in their production.” *460 Zidel, 940 A.2d at 263 (quoting Osborne, 495 U.S. at 111, 110 S.Ct. 1691).
In rejecting the Zidel court’s analysis, the district court in Hotaling explained:
Zidel overlooked Bach’s recognition that [the well-known child entertainer] was harmed even though he had not actually engaged in the conduct depicted in the morphed photo.... The court in Zidel failed to recognize that Bach focused at least partly on the harm to [the well-known child entertainer], the child who had not engaged in sexually explicit activity, in rejecting the defendant’s argument. Based on its failure to analyze properly the nuances of Bach and the particular facts before it in light of current federal law, Zidel reached the improvident conclusion that lack of actual sexual conduct on the part of the identifiable minor in a morphed image — if such image is merely possessed and not distributed by a defendant — renders it protected speech under the First Amendment. See Zidel, 940 A.2d at 264-65.
The Court notes that the holding of Zidel is at odds with every other federal and state court which has confronted, even indirectly, the constitutional question raised by the dicta in Ashcroft concerning statutes which impose criminal penalties for possession of morphed images of child pornography....
Hotaling, 599 F.Supp.2d at 319 (emphasis omitted). The district court then went on to hold that
the creation and possession of pornographic images of living, breathing and identifiable children via computer morphing is not “protected expressive activity” under the Constitution [because such] images “implicate the interests of real children” and are “closer” to the types of images placed outside the protection of the First Amendment in Ferber.[10] Ashcroft, 535 U.S. at 242, 254,122 S.Ct. 1389.
Hotaling, 599 F.Supp.2d at 321 (citation omitted).
While Hotaling was also based on 18 U.S.C. § 2256(8)(C), the analysis contained therein is helpful for an analysis of section 827.071(l)(g) and (5). I interpret the phrase “simulated sexual intercourse” as set forth in the definition of sexual conduct in section 827.071(l)(g) to include morphed images (computer generated or otherwise) such as the ones at issue in this case. Thus because the Florida statute prohibits some types of morphed images — at least those involving certain kinds of simulated sexual activity — Hotaling is instructive on whether such images are protected by the First Amendment. I reject Parker’s argument that Zidel should control the outcome of his case. Instead, I would align with Hotaling to the extent that it holds that where photographs depicting identifiable children are morphed with adult bodies engaged in sexual activity, such photographs are not protected by the First Amendment.[11]
Accordingly, I would affirm in part, reverse in part, and remand.

. See Polite v. State, 973 So.2d 1107, 1111 (Fla.2007) (noting that in determining legislative intent, courts must first look at statute’s plain meaning).

. New York v. Ferber, 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

. See State v. Beckman, 547 So.2d 210 (Fla. 5th DCA 1989).